IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROGER LEE NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | 4:07CV3126 |
| | ) | |
| v. | ) | |
| | ) | |
| DAWES, COUNTY OF, Nebraska, JOHN R. MADSEN, individually and in their official capacities as County Commissioners, GARY FISHER, individually and in their official capacities as County Commissioners, GIL NITSCH, individually and in their official capacities as County Commissioners, and JEFF FANKHAUSER, In his individual and official capacity as Veteran Service Officer, | ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS |
| Defendants. | ) ) | |

On May 7, 2007, the plaintiff, Roger Lee Nelson, filed a complaint against Defendants Dawes County, Nebraska; John R. Madsen, Gary Fisher, and Gil Nitsch, individually and in their official capacities as county commissioners; and Jeff Fankhauser, individually and in his official capacity as "Veteran Service Officer." (Compl., filing 1.) Now before me is a motion to dismiss the complaint filed by Defendants Madsen, Fisher, Nitsch, and Fankhauser "in their individual capacities." (See filing 20.) For the following reasons, I find that this motion must be granted in part.

## I.   BACKGROUND

In summary, the plaintiff's complaint alleges as follows. The plaintiff is a resident of Dawes County, Nebraska, and is now approximately 59 years of age. (Compl., filing 1, ¶¶ 4, 8.) Defendants Madsen, Fisher, and Nitsch were, at relevant times, Dawes County Commissioners.

1

(Id. ¶ 6.) On April 18, 2005, the plaintiff was hired by Dawes County[1] to serve as its "Administrative Assistant to the Veteran's Service Officer." (Id. ¶¶ 9-10.) On May 20, 2005, the plaintiff applied for the position of "Veteran's Service Officer." (Id. ¶ 11.) Ultimately, however, the plaintiff "was denied the position" by Defendants Madsen, Fisher, and Nitsch, and the position was given to Defendant Fankhauser. (Id. ¶¶ 11-12.)

The plaintiff claims that Fankhauser was a "younger[,] less experienced applicant." (Id.) More specifically, the plaintiff alleges that Fankhauser "is a high school graduate and has worked as a delivery driver and as a meter reader for a utility company," while the plaintiff "has twenty-four years of experience working as a nursing home administrator, 2 years [of experience] as a superintendent for Colorado's Veterans Home, 5 years [of experience as] assistant administrator for the Nebraska Veteran's Home, [and] 5 years of banking experience." (Id. ¶¶ 13-14.) In addition, the plaintiff states that he "is a Viet Nam Veteran" and "has a bachelor's degree in business economics," and he notes that he was "the assistant to the [V]eteran[']s Service Officer at the time of his application." (Id. ¶¶ 14-15.)

On an unspecified date, the plaintiff "filed a charge of discrimination as a result of their failure to hire him as Veteran['s] Service Officer." (Compl., filing 1, ¶ 16.) I take it that the plaintiff attributes this "failure" to Defendants Madsen, Fisher, and Nitsch, though the complaint is ambiguous on this point. After he filed his charge of discrimination, the plaintiff did not receive a pay raise that was due upon the completion of his three-month probationary period. (Id. ¶ 17.)

On August 11, 2005, the plaintiff received a memo from Fankhauser stating that Fankhauser would "transport veterans for medical care"–a responsibility that had been the plaintiffs'–"unless there was an emergency and two days notice given." (Compl., filing 1, ¶ 19.) However, on August 17, 2005, the plaintiff received a second memo from Fankhauser stating that "two days notice would not be required" and that the plaintiff "could do transports as required." (Id. ¶ 20.) The plaintiff called Defendant Fisher to discuss "the transport issue," but Fisher "hung

---

[1]To be precise, the complaint alleges that the "[p]laintiff was employed by the Respondent since April 18, 2005." (Compl., filing 1, ¶ 9.) I take it that "the Respondent," as the term is used in this context, refers to Defendant Dawes County.

up on Plaintiff." (Id. ¶ 21.)

On September 7, 2005, an unidentified person told the plaintiff that "things were not going well" and that "he was done as Veteran Service Officer." (Compl., filing 1, ¶ 22.)[2] An unidentified person also told the plaintiff that "written reasons for the termination" were "in the mail," but the plaintiff did not receive this mailing. (Id. ¶ 23.) The plaintiff alleges, "Defendant published in the newspaper that the plaintiff would be notified . . . [in] writing of the reasons for his termination, breaking his confidentiality regarding personell [sic] issues, and again [the plaintiff] was never given written reasons for his termination." (Id. ¶ 24.) He adds, "When Plaintiff actually received a letter from the Defendant, it referred him to contact a private attorney given in the letter to find out the reasons for his termination." (Id. ¶ 25.) The plaintiff claims that the failure to provide "written reasons for the termination" violated one of "the Defendant['s] . . . handbooks." (Id. ¶ 26.) In addition, he claims that he was terminated without either two weeks' notice or two weeks' pay in violation of the terms of a second handbook. (Id.) I note in passing that the complaint does not specify which "Defendant" is responsible for the acts alleged in paragraphs 24 through 26.

On May 7, 2007, the plaintiff filed a five-count complaint against the defendants. (See Compl., filing 1.) Count I alleges that the defendants discriminated against the plaintiff on the basis of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq. (See Compl., filing 1, ¶¶ 29-31.) Count II alleges that the defendants "treat[ed the plaintiff] differently than younger individuals," thereby depriving him of "Equal Protection of the laws" in violation of the Fourteenth Amendment. (See Compl., filing 1, ¶¶ 32-35.) Count III alleges that the defendants retaliated against the plaintiff in violation of the ADEA. (See Compl., filing 1, ¶¶ 36-38.) Count IV alleges that the defendants "retaliat[ed] against [the plaintiff] for speaking out on matters of public concern" in violation of the First Amendment. (See Compl., filing 1, ¶¶ 39-43.) Count V alleges that the defendants "fail[ed] to give [the plaintiff] proper notice and an opportunity to be heard before taking his property and interests" in violation of the

---

[2]This allegation is confusing, because the plaintiff claims that he was "denied the position" of Veteran's Service Officer. I take it that the plaintiff means to allege that he was terminated from his position as Administrative Assistant to the Veteran's Service Officer.

Fourteenth Amendment. (See Compl., filing 1, ¶¶ 44-48.) On September 26, 2007, Defendants Madsen, Fisher, Nitsch, and Fankhauser moved to dismiss the plaintiff's "individual capacity" claims against them. (See filing 20.) The plaintiff has not responded to the defendants' motion, though he was granted leave to file a response out of time. (See filings 24, 26, 27, 30.) On or about October 30, 2007, however, the parties stipulated to the dismissal of Count I. (See filings 25, 30.) It remains to be determined whether the remaining individual capacity claims against Defendants Madsen, Fisher, Nitsch, and Fankhauser (hereinafter "the individual defendants") must be dismissed.

## II.   ANALYSIS

The individual defendants argue that their motion should be granted because the complaint fails to state a claim against them upon which relief may be granted. (See filing 20 at 1.) In the alternative, the individual defendants argue that they are entitled to qualified immunity from suit. (See id.) I shall analyze each of these arguments in turn.

**A. Whether the Complaint Fails to State a Claim Upon Which Relief May Be Granted**

The individual defendants argue first that the claims against them must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curium) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)), and "all reasonable inferences from the complaint must be drawn in favor of the nonmoving party," Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Erickson, 127 S. Ct. at 2200. "Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atlantic Corp., 127 S. Ct. at 1964). Nevertheless, "a viable complaint must . . . include 'enough facts to state a claim to relief that is plausible on its face.'" Hogue v. Palisades Collection, LLC, 494 F. Supp. 2d 1043, 1046 (S.D. Iowa 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974). This does not mean that a case should be "dismissed simply because the court is doubtful that the

plaintiff will be able to prove all of the necessary factual allegations." Id. at 1046-47 (citations omitted). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1046 (quoting Bell Atlantic Corp., 127 S. Ct. at 1965).

The individual defendants submit that, although the caption of the complaint names them as defendants in their individual capacities, the body of the complaint alleges that each of them "was acting in [his] official capacity either as a member of the Board of County Commissioners . . . or as an employee of Dawes County." (Defs.' Br., filing 21, at 3.) They argue,

> The Plaintiff's Complaint is unambiguous that all actions of Defendants Madsen, Fisher, Nitsch and Fankhauser were performed in their official capacities. As such, these defendants should not be liable in their individual capacities, and they should be dismissed from this action.

(Id. at 4.) In support of their argument, the individual defendants cite Holz v. Burling, 120 N.W. 954 (Neb. 1909); Bohl v. Buffalo County, 557 N.W.2d 668 (Neb. 1997); and Cole v. Clarke, 598 N.W.2d 768 (Neb. Ct. App. 1999); and they quote the following passages from Allen v. Miller, 6 N.W.2d 594, 598 (Neb. 1942):

> Members of a county board are not ordinarily liable to individuals for their acts in connection with their official powers and duties, for such official acts are not performed in an individual capacity, and statutes imposing liability therefore are in derogation of the common-law and to be strictly construed.
>
> "Where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him he is sometimes called a quasi judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, provided the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption."
>
> "County commissioners act quasi judicially in passing upon claims against the county wherever their action is not merely a formal prerequisite to the issuance of a warrant, but involves the determination of questions of fact upon evidence, or the exercise of discretion in ascertaining or fixing the amount to be allowed."

(Citations omitted). (See Defs.' Br., filing 21, at 3-4.)

The individual defendants' argument is difficult to follow. On the one hand, they appear to argue that the plaintiff's individual capacity claims against them must be dismissed because

5

the individual defendants performed all of the actions alleged in the complaint "in their official capacities." (Id. at 3.) On the other hand, their reliance on Allen and Holz seems to suggest that their argument is immunity-based, while their citations to Bohl and Cole suggest that their argument is based on the premise that the plaintiff's suit cannot proceed under the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq., or under Revised Statutes of Nebraska section 20-148. I am not inclined to sort out the individual defendants' arguments for them. More importantly, I am not persuaded that the plaintiff has failed to state "individual capacity" claims against Madsen, Fisher, Nitsch, and Fankhauser simply because the complaint suggests that those defendants injured the plaintiff while acting in their official capacities.[3] Nor am I persuaded that the claims must be dismissed in accordance with the cases cited on pages three and four of the individual defendants' brief.

### B. Whether the Individual Defendants Are Entitled to Qualified Immunity

The individual defendants argue that they are entitled to qualified immunity on each of the plaintiff's claims. (See Defs.' Br., filing 21, at 4-6.) "Government officials performing discretionary functions are entitled to qualified immunity unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." Whisman v. Rinehart, 119 F.3d 1303, 1309 (8th Cir. 1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

The qualified immunity analysis is a two-step process. The threshold

---

[3]I note in passing that a number of the plaintiff's claims appear to be based on 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The Supreme Court has explained that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation omitted) (emphasis added). "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Id. at 166 (emphasis in original). The individual defendants seem to argue that the plaintiff must allege that the defendants acted outside the scope of their employment in order to state an individual capacity claim against them. None of the authorities cited by the individual defendants support this proposition, however, and the Supreme Court has specifically rejected the notion that "state officials may not be held liable in their personal capacity for actions they take in their official capacity." Hafer v. Melo, 502 U.S. 21, 27 (1991).

6

question is whether the plaintiff has alleged the violation of a constitutional right. If [the] plaintiff[] meets this standard, we next determine "whether that right was 'clearly established' at the time of the alleged violation." "A right is 'clearly established' when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." "In determining whether the legal right at issue is clearly established, this circuit applies a flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles."

Id. (citations omitted). "[Q]ualified immunity is an affirmative defense . . . which will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Id. (citations omitted). See also Dornheim v. Sholes, 430 F.3d 919, 926 (8th Cir. 2005).

In support of their qualified immunity defense, the individual defendants do not argue that the plaintiff has failed to allege a violation of a constitutional or statutory right. (See Defs.' Br., filing 21, at 4-6.) Although they do submit that they "are immune from suit because a reasonable public official would not have known that their [sic] conduct constituted a violation of Plaintiff's clearly established rights," (id. at 5), their argument actually seems to be based on a different theory. They state,

> The First Amendment to the U.S. Constitution guarantees the right of free speech, the right of assembly, the right to petition the government, the right to a free press, and the right to religious freedom. The Fourteenth Amendment guarantees the rights to equal protection and due process. The ADEA prohibits discrimination against persons on the basis of age.
>
> The Complaint is absent of any factual information to support the allegations that Defendants Madsen, Fisher, Nitsch and Fankhauser violated any of these federally guaranteed rights or laws. Throughout Plaintiff's Complaint, Plaintiff alleges Defendants collectively took actions which infringed upon Plaintiff's rights, but there is no differentiating among the various defendants as to which defendant took what specific action to violate any of Plaintiff's rights. Liability requires a causal link to, and direct responsibility for, a deprivation of rights or violation of laws. Stagemeyer v. County of Dawson, 192 F. Supp. 2d 998 (D. Neb. 2002). Plaintiff makes no allegations as to the specific actions taken by Defendants Madsen, Fisher, Nitsch and Fankhauser which would show their causal link to or direct responsibility for any alleged violation of the First Amendment and/or Fourteenth Amendment to the U.S. Constitution or the ADEA. A complaint must allege personal participation by a defendant in unconstitutional or unlawful acts. McDowell v. Jones, 990 F.2d 433, 435 (8th

7

Cir. 1993).

(Defs.' Br., filing 21, at 6.)

In McDowell, the Eighth Circuit held that "[t]o hold a supervisor liable under § 1983, a plaintiff must allege and show that the supervisor personally participated in or had direct responsibility for the alleged violations" or "that the supervisor actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts." 990 F.2d at 435. Stagemeyer cites McDowell and Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990), for this same basic proposition. See 192 F. Supp. 2d at 1006 ("[L]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."). It is reasonable to infer from the complaint that the individual defendants were the plaintiff's "supervisors," and I agree with the individual defendants' argument that the complaint must include allegations that satisfy the rule set forth in McDowell–at least insofar as the plaintiff's individual capacity claims are based on § 1983. I fail to see the connection between this argument and the affirmative defense of qualified immunity, however.

In any case, I have reviewed Counts II, IV, and V to determine whether the plaintiff has alleged that the individual defendants have "causal links" to the alleged violations.[4] Count II alleges that Defendants Madsen, Fisher, Nitsch, and Fankauser, "in their individual and official capacities, deprived the Plaintiff of Equal Protection of the laws contrary to the Fourteenth Amendment to the United States Constitution by treating him differently than younger individuals." (Compl., filing 1, ¶ 35.) More specifically, the complaint alleges that Defendants Madsen, Fisher, and Nitsch "denied" the plaintiff the position of Veteran's Service Officer, (id. ¶ 11), and although the complaint does not allege that Madsen, Fisher, and Nitsch selected the younger, less-experienced Fankhouser for the Veteran's Service Officer position, (see id. ¶ 12), it can be fairly inferred that they did not "deny" Fankhauser the position. Thus, it seems to me that the complaint alleges sufficient facts to state a plausible claim that Defendants Madsen, Fisher,

---

[4]As noted above, the parties have already stipulated to the dismissal of Count I. Counts II, IV, and V are, at least in my view, § 1983 claims; therefore, McDowell and Stagemeyer are apposite. Count III alleges that the defendants retaliated against the plaintiff in violation of the ADEA. Because this count is not based on § 1983, the McDowell/Stagemeyer rule does not apply.

and Nitsch personally participated in the alleged violation.[5]  There is no allegation, however, that Fankhauser had any "causal link" to the alleged violation.  Therefore, Defendant Fankhauser will be dismissed from Count II insofar as he is named in his individual capacity.

Count IV alleges that Defendants Madsen, Fisher, Nitsch, and Fankhauser, "in their individual and official capacities, deprived the Plaintiff of his rights to Free Speech contrary to the First Amendment to the United States Constitution by retaliating against him for speaking out on matters of public concern."  (Compl., filing 1, ¶ 35.)  The complaint does not allege that any specific act was taken in retaliation for the plaintiff's speech, but one can reasonably infer that the following acts allegedly occurred in retaliation for the plaintiff's filing of a charge of discrimination: 1) the plaintiff did not receive a scheduled pay increase, (id. ¶ 17); 2) the plaintiff received a memo from Fankhauser on August 11, 2005, that altered some of the plaintiff's job responsibilities, though he received a second memo from Fankhauser on August 17, 2005, that seems to have restored his responsibilities, (id. ¶¶ 19-20); 3) Fisher hung up his telephone on the plaintiff, (id. ¶ 21); 4) the plaintiff was terminated from his position, (id. ¶ 22); 5) the plaintiff did not receive written reasons for his termination, (id. ¶¶ 23-25); 6) "Defendant" published certain information about the plaintiff's termination in a newspaper, (id. ¶ 24); and 7) the plaintiff did not receive two weeks' notice prior to his termination, nor did he receive two weeks' pay upon his termination, (id. ¶ 26).  The complaint alleges sufficient facts to state a plausible claim that Defendant Fisher personally participated in the alleged violation by hanging up his phone on the plaintiff and that Fankhauser personally participated in the alleged violation by altering the plaintiff's job responsibilities.[6]  Therefore, the individual capacity claims against

---

[5]I note parenthetically that the individual defendants cite no authority in support of their argument that the complaint is insufficient because it alleges that Madsen, Fisher, and Nitsch acted collectively, and I am not persuaded that the individual defendants' motion should be granted on that basis.

[6]I emphasize that I make no finding as to whether the complaint alleges sufficient facts to state a plausible claim that Fisher and Fankhauser's actions amounted to retaliation in violation of the First Amendment.  The individual defendants have argued only that the complaint fails to allege that the individual defendants have "causal links" to the alleged violation, and my analysis is limited to that question.

Fisher and Fankhauser will not be dismissed at this time. However, because there are no allegations that Defendants Madsen and Nitsch had any causal link to the alleged First Amendment violations, these defendants will be dismissed from Count IV insofar as they are named in their individual capacities.

Count V alleges that Defendants Madsen, Fisher, Nitsch, and Fankhauser, "in their individual and official capacities, deprived the Plaintiff of his rights to [d]ue process contrary to the Fourteenth Amendment to the United States Constitution by failing to give him proper notice and an opportunity to be heard before taking his property and interests." (Compl, filing 1, ¶ 47.) I infer that the alleged "taking" refers to the plaintiff's termination without written reasons and without either two weeks' notice or two weeks' pay. (See id. ¶¶ 23-27.) The complaint does not allege, however, that any individual defendant had a "causal link" to the plaintiff's termination. (See id. ¶ 22.) Nor does it allege that any individual defendant had a "causal link" to the alleged failure to provide the plaintiff with written reasons for his termination, or to provide the plaintiff with two weeks' notice prior to his termination, or to provide the plaintiff with two weeks' pay in lieu of two weeks' notice. (See id. ¶¶ 23-27.) Therefore, Defendants Madsen, Fisher, Nitsch, and Fankhauser will be dismissed from Count V insofar as they are named in their individual capacities.

**IT IS ORDERED** that:

1. Defendant Fankhauser is dismissed from Count II of the complaint insofar as he is named in his individual capacity;

2. Defendants Madsen and Nitsch are dismissed from Count IV of the complaint insofar as they are named in their individual capacities;

3. Defendants Madsen, Fisher, Nitsch, and Fankhauser are dismissed from Count V of the complaint insofar as they are named in their individual capacities; and

4.    In all other respects, the "Motion to Dismiss by Defendants John R. Madsen, Gary Fisher, Gil Nitsch and Jeff Fankhauser in Their Individual Capacities," filing 20, is denied.

Dated December 5, 2007.

                BY THE COURT

                s/ Warren K. Urbom
                United States Senior District Judge