IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROGER LEE NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | 4:07CV3126 |
| | ) | |
| v. | ) | |
| | ) | |
| DAWES, COUNTY OF, Nebraska, JOHN R. MADSEN, individually and in their official capacities as County Commissioners, GARY FISHER, individually and in their official capacities as County Commissioners, GIL NITSCH, individually and in their official capacities as County Commissioners, and JEFF FANKHAUSER, In his individual and official capacity as Veteran Service Officer, | ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) ) | |

On December 4, 2007, the defendants filed a motion for summary judgment on each of the claims alleged in the plaintiff's complaint. (See filing 33.) For the following reasons, I find that the defendants' motion must be granted in part.

**I. BACKGROUND**

The following facts are taken from the "statements of facts" appearing in the parties' briefs. (See filing 34 at 2-9; filing 46 at 2-10.) Preliminarily, I note that Nebraska Civil Rule 56.1(a)(2) provides that "[t]he statement of facts shall consist of <u>short</u> numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials relied upon to support the material facts recited in that paragraph," and that the "[f]ailure to provide citations to the exact locations in the record supporting the factual allegations shall be grounds to deny the motion." (Emphasis in original). With few exceptions, the defendants have failed to provide pinpoint references to the materials

1

that they rely upon in support of their statement of facts. Although I shall not deny the defendants' motion outright due to this failure, nor shall I expend much effort to search through the defendants' materials to find support for facts that the plaintiff disputes. Counsel should strive to comply with this court's local rules in the future.

In May 2005, the Dawes County Veterans Service Committee (the Committee) began accepting applications for the position of "Veterans Service Officer." (Defs.' Statement of Undisputed Facts, filing 34 (Defs.' Facts), ¶ 7.) See also Neb. Rev. Stat. § 80-101 (providing that "[e]ach county board shall appoint a county veterans service committee of five members"); id. § 80-407 (providing that "[e]ach county veterans service committee shall appoint, subject to confirmation by the county board, a county veterans service officer for its county after the applicant has been certified as eligible . . . by the Director of Veterans' Affairs"). The person selected to fill this position would be responsible for "advising and counseling veterans and their families in matters relating to benefits that [they] may be entitled to, being knowledgeable about applicable current laws and codes, . . . interpreting current laws and codes pertaining to veterans benefits as necessary," and supervising "the Administrative Assistant in the Veterans Service Office." (Defs.' Facts ¶ 6.) The number of applications received by the Committee is not specified in the parties' statements of facts; however, there is evidence that the Committee decided to interview three candidates for the position. (Id. ¶ 7.) Two of the candidates were interviewed in June 2005, but the third did not appear for his interview. (Id.) The plaintiff, who had been serving as the Administrative Assistant in the Veterans Service Office since April 18, 2005, was one of the candidates who interviewed for the position. (Defs.' Facts ¶ 8.) At the time of his interview, the plaintiff was fifty-seven years of age. (Pl.'s Controverted Facts, filing 46 (Pl.'s Facts), ¶ 3.) Defendant Jeff Fankhauser, who was then thirty-one years of age, also interviewed for the position. (Defs.' Facts, ¶ 9.)

At all relevant times, Ted Vastine was a member of the Committee. (See Defs.' Index, filing 31, Ex. 10, Vastine Aff. ¶ 2.) Sometime during the "selection process," Vastine was contacted by three or four citizens who advised against the plaintiff's selection as Veterans Service Officer. (See Defs.'s Facts ¶ 10. See also Defs.' Index, filing 31, Ex.10, Vastine Aff. ¶ 9; id., Ex. 11, Swinney Aff. ¶ 9.) For example, there is evidence that Ms. Sharon Salisbury

2

Cordova, who had "personal experience" with the plaintiff stemming from the plaintiff's "previous position as the head of the Crestview nursing home," told Vastine that in her opinion, the "[p]laintiff would not be a good selection for the position of Veterans Service Officer." (Defs.' Index, filing 31, Ex. 12, Cordova Aff. ¶ 4 (emphasis omitted).)[1]  The Committee did not receive "such complaints or negative comments" about Defendant Fankhauser.  (Defs.' Facts ¶ 10.)

In a letter dated June 14, 2005, John Herron, who served as chairman of the Committee, advised the County Board of Commissioners that the Committee decided to appoint Defendant Fankhauser to the position of Veterans Service Officer.  (Defs.' Facts ¶ 15.)  Herron's letter also stated that Fankhauser's eligibility had been certified by the Nebraska Department of Veterans Affairs.  (Id.)  At some unspecified time, the County Board confirmed Defendant Fankhauser's appointment.  (Id. ¶ 16 (citing Neb. Rev. Stat. § 80-407).)  It is undisputed, however, that Defendants John R. Madsen, Gary Fisher, and Gil Nitsch were members of the County Board at all relevant times.  (Id. ¶ 1.)

The plaintiff continued to serve as Administrative Assistant to the Veterans Service Officer under Defendant Fankhauser's supervision.  (Defs.' Facts ¶ 21.)  On July 21, 2005, the plaintiff filed a charge of discrimination with the Nebraska Equal Opportunity Commission (NEOC) and the Equal Employment Opportunity Commission (EEOC) alleging that Dawes County discriminated against him on the basis of his age by selecting Fankhauser for the Veterans Service Officer position.  (Defs.' Facts ¶ 19.)  Fankhauser claims that after the plaintiff filed this charge, the plaintiff ceased to communicate effectively in the workplace, scheduled

---

[1]There is evidence that Ms. Cordova formed an opinion that the plaintiff "behaved in a rude, uncaring and unprofessional manner," (Defs.' Index, filing 31, Ex. 12, Cordova Aff. ¶ 4), but there is no evidence that she relayed this specific opinion to Mr. Vastine.  For his part, the plaintiff states that he "do[es] not recall having a disagreement or issue" with Ms. Cordova or her father, who was a "patient" at Crestview during the plaintiff's time there, but he does recall Ms. Cordova visiting the plaintiff's office and thanking him "for everything" after her father died.  (Pl.'s Index, filing 42, Ex. 1, Nelson Aff. ¶ 13.)  In any case, although the plaintiff may disagree with the basis for Ms. Cordova's opinion of him, there appears to be no genuine dispute that Ms. Cordova contacted Vastine and offered her opinion that the plaintiff would not be "a good selection."

appointments improperly, hid confidential documents in his hat, told veterans that he was unhappy with the County Board for selecting Fankhauser for the Veterans Service Officer position, made "inappropriate innuendos related to the personal life of one particular County Commissioner," and allowed his son to use the office computer in contravention of policy. (Defs.' Facts ¶¶ 22-26.) In response, the plaintiff does not deny that he allowed his son to use the office computer. He explains, however, that his son was trying to fix the computer, and he adds that Fankhauser's own sister and the sheriff also made attempts to get the computer working properly. (See Pl.'s Facts ¶ 16.) Each of Fankhauser's remaining criticisms of the plaintiff's job performance is disputed, (see id. ¶¶ 13-17), and the plaintiff submits that no performance problems were ever brought to his attention during his employment as Administrative Assistant, (id. ¶ 18).

Defendants Madsen, Fisher, and Nitsch claim that "[o]n various occasions" after Fankhauser assumed the position of Veterans Service Officer, they were "advised of performance-related complaints pertaining to Plaintiff." (Defs.' Facts ¶ 28.) These complaints appear to be identical to the criticisms raised by Defendant Fankhauser, which are summarized in the preceding paragraph. (Compare Defs.' Facts ¶ 28 with id. ¶¶ 22-26 and Pl.'s Facts ¶ 13-19.) Defendants Fisher and Nitsch add that they received "multiple complaints from veterans" about the plaintiff's job performance, though none of these complaints is described specifically. (See Defs.' Facts ¶ 29 (citing, inter alia, Defs.' Index, filing 31, Exs. 7-8).) On September 7, 2005, the County Commissioners called the plaintiff into a meeting, and Defendant Nitsch told the plaintiff that he was "done." (Defs. Facts ¶ 29 (citing, inter alia, Defs.' Index, filing 31, Ex. 14, Nelson Dep. at 42:13-45:6).)

The Dawes County Personnel Policy and Procedure Manual (the Policy Manual) provides that "a department head may dismiss any employee under his/her jurisdiction by delivering a written statement to the employee concerned." (Pl.'s Facts ¶ 22 (quoting Defs.' Index, filing 31, Ex. 1 at CM/ECF page 13).) The Policy Manual also provides that "[a]n employee who is dismissed has the option to file a grievance." (See Defs.' Index, filing 31, Ex. 1 at CM/ECF page 13.) It is undisputed that the plaintiff did not file such a grievance; however, it is also undisputed that the plaintiff was not given a written statement concerning his termination. (See Defs.' Facts

4

¶ 31; Pl.'s Facts ¶ 22.)

On or about September 29, 2005, the plaintiff filed a second charge of discrimination alleging that he suffered retaliation after he filed his first charge.  (Defs.' Facts ¶ 32.)  Ultimately, the EEOC notified the plaintiff of his right to sue based on this charge and the original charge of discrimination.  (See id. ¶¶ 33-34.)

On May 7, 2007, the plaintiff filed a five-count complaint against Defendant Dawes County, Nebraska, and Defendants Madsen, Fisher, Nitsch, and Fankhauser in their individual and official capacities.  (See Compl., filing 1.)  Count I alleges that the defendants discriminated against the plaintiff on the basis of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq.  (See Compl., filing 1, ¶¶ 29-31.) Count II alleges that the defendants "treat[ed the plaintiff] differently than younger individuals," thereby depriving him of "Equal Protection of the laws" in violation of the Fourteenth Amendment.  (See Compl., filing 1, ¶¶ 32-35.)  Count III alleges that the defendants retaliated against the plaintiff in violation of the ADEA.  (See Compl., filing 1, ¶¶ 36-38.) Count IV alleges that the defendants "retaliat[ed] against [the plaintiff] for speaking out on matters of public concern" in violation of the First Amendment.  (See Compl., filing 1, ¶¶ 39-43.)  Finally, Count V alleges that the defendants "fail[ed] to give [the plaintiff] proper notice and an opportunity to be heard before taking his property and interests" in violation of the Fourteenth Amendment.  (See Compl., filing 1, ¶¶ 44-48.)

On or about October 30, 2007, the parties stipulated to the dismissal of Count I.  (See filings 25, 30.)  Also, in accordance with my memorandum and order on the defendants' motion to dismiss, (filing 35), Fankhauser has been dismissed from Count II of the complaint insofar as he is named in his individual capacity; Madsen and Nitsch have been dismissed from Count IV insofar as they are named in their individual capacities; and Madsen, Fisher, Nitch, and Fankhauser have been dismissed from Count V insofar as they are named in their individual capacities.  The defendants have moved for summary judgment on each of the plaintiff's remaining claims.  (See filing 33.)  My analysis of this motion follows.

5

## II. STANDARD OF REVIEW

A motion for summary judgment shall be granted by the court "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). However, "[t]he district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial." Firemen's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir. 1993). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson, 477 U.S. at 257, and "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," id. at 256 (citing Fed. R. Civ. P. 56(e)).

## III. ANALYSIS

Presently, the plaintiff's claims are: A) an equal protection claim against Dawes County, against Madsen, Fischer, and Nitsch in their individual and official capacities, and against Fankhauser in his official capacity only; B) an ADEA-based retaliation claim against all of the defendants; C) a "free speech" claim against Dawes County, against Fisher and Fankhauser in their individual and official capacities, and against Madsen and Nitsch in their official capacities only; and D) a due process claim against Dawes County and against all of the remaining defendants in their official capacities only. The defendants argue that they are entitled to summary judgment on each of these claims. (See Defs.' Br., filing 34, at 11-29.) I shall consider

the defendants' arguments in turn.

### A. Count II - Equal Protection

The plaintiff claims that the defendants "deprived the Plaintiff of Equal Protection of the laws . . . by treating him differently than younger individuals." (Compl., filing 1, ¶ 35.) The defendants argue that they are entitled to summary judgment on this claim. I agree.

The plaintiff's equal protection claim is brought pursuant to 42 U.S.C. § 1983. "A government official may be liable [under § 1983] upon a showing of deprivation of a constitutional or federal right." Ottman v. City of Independence, Mo., 341 F.3d 751, 756 (8th Cir. 2003). "To establish a § 1983 cause of action, [a plaintiff] must establish [that he] was deprived of a right 'secured by the Constitution and laws' of the United States, and . . . [that] the deprivation was caused by a person or persons acting under color of state law." Id. The connection between the plaintiff's allegations and each of these two elements merits comment.

First, as noted above, the plaintiff claims that he suffered discrimination on the basis of his age in violation of the Equal Protection Clause of the Fourteenth Amendment. Age is not a suspect classification under the equal protection clause. See, e.g., Kimel v. Florida Bd. of Regents, 528 U.S. 62, 83 (2000); Weber v. Strippit, Inc., 186 F.3d 907, 911 (8th Cir. 1999). Nevertheless, "age discrimination may provide the basis for an equal protection claim," Stalhut v. City of Lincoln, 145 F. Supp. 2d 1115, 1120 (D. Neb. 2001), if the government lacks a rational basis for its age-based employment decision, e.g., Kimel, 528 U.S. at 83-86 (2000); Gregory v. Ashcroft, 501 U.S. 452, 470-71 (1991); Humenansky v. Regents of University of Minnesota, 152 F.3d 822, 827 (8th Cir. 1998).[2]

Second, although the plaintiff claims that his right to equal protection was deprived by persons acting under the color of state law, he does not merely seek to hold Madsen, Fisher, and Nitsch individually liable for this deprivation: His claim is also directed toward Madsen, Fisher, Nitsch, and Fankhauser in their official capacities, along with Dawes County itself. "Official-

---

[2]It should be noted that "the parameters of [the] constitutional right [to be free from age discrimination in employment] may not be coextensive with statutory rights under the ADEA." Stalhut, 145 F. Supp. 2d at 1121 (citing Kimel, 528 U.S. at 86).

7

capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. Dept. of Social Services of New York, 436 U.S. 658, 690 n.55 (1978)); see also Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006). Defendants Madsen, Fisher, Nitsch, and Fankhauser are agents of Defendant Dawes County. Thus, "in all respects other than name," the plaintiff's official capacity claims against Madsen, Fischer, Nitsch, and Fankhauser are "to be treated as a suit against" Dawes County. Id. at 166 (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)). As a result, the plaintiff's official capacity claims are bound to the same fate as the plaintiff's claim against Dawes County.

      I shall begin my analysis by focusing on the plaintiff's "individual capacity" claims against Madsen, Fisher, and Nitsch.

      "The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly-situated people alike." Stalhut v. City of Lincoln, 145 F. Supp. 2d 1115, 1121 (D. Neb. 2001) (citing Ellebracht v. Police Bd. of Metropolitan Police Dept. of St. Louis, 137 F.3d 563, 565 (8th Cir. 1998)). "Thus, the threshold inquiry in an equal protection case is whether the plaintiff is similarly situated to others who allegedly received preferential treatment." Id. at 1121-22 (citing Domina v. Van Pelt, 235 F.3d 1091, 1099 (8th Cir. 2000)). After it has been demonstrated that the plaintiff was similarly situated to the person or persons who received preferential treatment, "it must next be determined whether there is sufficient evidence to show that the [preferential treatment] was made . . . on the basis of age . . . ." Id. at 1122. The analysis of this question may proceed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Ottman v. City of Independence, Mo., 341 F.3d 751, 756 (8th Cir. 2003); Van Arkel v. Warren County, 365 F. Supp. 2d 979, 1000 (S.D. Iowa 2005); Stalhut, 145 F. Supp. 2d at 1122. Under the McDonnell Douglas framework, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination." Stalhut, 145 F. Supp. 2d at 1122. "Once a prima facie case is established, a rebuttable presumption shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the employer articulates such a reason, the presumption disappears and the plaintiff bears the burden of proving that the

employer's proffered reason is merely a pretext for discrimination." Id.

For the purposes of their summary judgment motion, the defendants concede that the plaintiff and Fankhauser were "similarly situated," and that the plaintiff can establish a prima facie case of age discrimination. (See Defs.' Br., filing 34, at 11-12.) They argue, however, that Fankhauser was selected for the Veterans Service Officer position for legitimate, nondiscriminatory reasons. (See id. at 12-13.) Specifically, the defendants submit that members of the Veterans Service Committee received negative comments about the plaintiff's candidacy from members of the public, including Sharon Salisbury Cordova, but received no such comments regarding Fankhauser.

In response, the plaintiff does not dispute that the defendants have satisfied their burden to articulate a nondiscriminatory reason for Fankhauser's selection, but he argues that the reason put forth by the defendants is merely a pretext for discrimination. (See Pl.'s Br., filing 46, at 14-18.) More specifically, the plaintiff claims that the defendants have come forward with inconsistent explanations for the decision to select Fankhauser for the Veterans Service Officer position, and that these inconsistencies are sufficient to support a finding of pretext. (See id. at 15-16 (citing Young v. Warner-Jenkinson Co., Inc., 152 F.3d 1018, 1022 (8th Cir. 1998)).) For the reasons explained below, however, I find that the "inconsistencies" cited by the plaintiff do not raise an inference that the defendants' proffered explanation is a pretext.

First, the plaintiff argues that "Vastine indicates in his affidavit he was contacted by '3 or 4 unnamed members of the public,' however Swinney [(who, like Vastine, was a member of the Veterans Service Committee)] does not mention that he personally got any calls." (Pl.'s Br., filing 46, at 16 (emphasis added).) This simply does not amount to evidence of an inconsistency.

Next, the plaintiff refers me to Defendant Dawes County's answer to the plaintiff's Nebraska Equal Opportunity Commission (NEOC) complaint,[3] which states,

---

[3]The defendants have moved to strike this exhibit on the ground that it is "irrelevant and immaterial." (Filing 55 at 3. See also filing 54 at 1 (objecting to the exhibit on the grounds that it "[c]ontains hearsay; lacks authentication; contains irrelevant material; violates best evidence rule; [and should be stricken pursuant to] Rule 403).) It seems to me that this exhibit is relevant and that it contains admissions of Defendant Dawes County; therefore, it will not be stricken.

9

> Prior to the interviews, all four committee members had received a call from a concerned citizen in Chadron who complained that her father (a Veteran) had been abused verbally and emotionally by the [plaintiff], who was working in the Veterans Service Office as a clerk at the time of the alleged abuse.
>
> A Committee member received information from an employee in a different office of Dawes County that the Committee should not hire the [plaintiff] because nobody in the Courthouse got along with the [plaintiff]. The individual making this representation also told the Committee member that the [plaintiff] may be under investigation for a discrepancy in funds from his past employment as a nursing home administrator of Crest View Care Center in Chadron, Nebraska.
>
> This committee member also made inquiry of the public whom may know the [plaintiff]. The consensus of this inquiry was to not hire the [plaintiff].

(Pl.'s Br., filing 46, at 16-17 (quoting Pl.'s Index, Ex. 2A).) Again, I see no inconsistency between this answer and the affidavits submitted by Vastine and Swinney. Moreover, this exhibit supports, rather than contradicts, the nondiscriminatory reason put forth by the defendants.

Finally, the plaintiff seems to suggest that inconsistencies inhere in statements attributed to John Herron and Ted Vastine, which appear in an NEOC investigator's interview summaries. (Pl.'s Br., filing 46, at 17 (citing Pl.'s Index, Nazarenus Aff. Exs. B-C).) As the defendants correctly note, however, these statements are inadmissible hearsay and cannot be considered in opposition to the instant motion for summary judgment. E.g. Brooks v. Tri-Systems, Inc., 425 F.3d 1109, 1111 (8th Cir. 2005). (See also filing 55 at 4 (arguing that the exhibits contain hearsay).)[4]

In summary, the evidentiary materials that may properly be considered in connection with the instant motion–including those submitted by the plaintiff–show that members of the Committee received negative comments about the plaintiff, but not Defendant Fankhauser. As there is no evidence that the defendants' proffered nondiscriminatory reason for selecting Fankhauser was merely a pretext, I find that Madsen, Fischer, and Nitsch are entitled to summary

---

[4]Similarly, I cannot consider Exhibit D to the plaintiff's affidavit, which is cited on page 18 of the plaintiff's brief. This exhibit, which appears to be a chart comparing the plaintiff's experience and qualifications to those of Fankhauser, is wholly lacking in foundation.

judgment on the plaintiff's equal protection claim to the extent that they are sued in their individual capacities.[5]

The plaintiff's claim against Dawes County–which, for the reasons noted above, should be understood to encompass the plaintiff's "official capacity" claims against Madsen, Fisher, Nitsch, and Fankhauser–fails as well. Dawes County cannot be held liable under § 1983 unless 1) an "official policy" or "custom" caused a violation of the plaintiff's rights, Monell v. Dept. of Social Services of New York, 436 U.S. 658, 690-91 (1978); or 2) the violation was caused by a government official with "final policymaking authority," City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (citation omitted); see also Davison v. City of Minneapolis, 490 F.3d 648, 659-60 (8th Cir. 2007). Because the plaintiff has failed to raise a genuine issue as to whether there has been a violation of his rights at all, there is no need to consider whether he might establish the liability of the county under either of these theories.

For the foregoing reasons, the defendants are entitled to summary judgment on Count II of the plaintiff's complaint.

### B. Count III - Retaliation in Violation of the ADEA

The plaintiff claims that the defendants violated the anti-retaliation provisions of the ADEA by "failing to increase his pay, changing his terms and conditions of employment[,] and . . . terminating" his employment. (Compl., filing 1, ¶ 37.) The defendants have moved for summary judgment on this claim, arguing that the plaintiff cannot establish a prima facie case of retaliation or show that the defendants' nondiscriminatory reason for terminating the plaintiff's employment was a pretext for unlawful retaliation. (See Defs.'s Br., filing 34, at 16.) Before I

---

[5]I note in passing that the undisputed evidence shows that Madsen, Fisher, and Nitsch merely confirmed Fankhauser's appointment to the position of Veterans Service Officer, and that the members of the Committee–who are not defendants in this case–considered the applicants and made the decision to appoint Fankhauser to the position. I have not been referred to evidence indicating that Madsen, Fisher, and Nitsch had any input into the Committee's decision to eliminate the plaintiff from consideration. Cf. Ottman v. City of Independence, Mo., 341 F.3d 751, 761 (8th Cir. 2003); Stalhut v. City of Lincoln, 145 F. Supp. 2d 1115, 1128-29 (D. Neb. 2001). Under the circumstances, the theory underlying the plaintiff's claim that Madsen, Fischer, and Nitsch are individually liable for discriminating against the plaintiff on the basis of age is difficult to grasp.

proceed to analyze the merits of the defendants' arguments, however, two preliminary matters merit attention.

First, the ADEA provides, "It shall be unlawful <u>for an employer</u> to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d) (emphasis added). Although the parties have not raised the matter, and although it appears that the Eighth Circuit has not yet addressed the matter squarely, I note that district courts within this circuit (including the United States District Court for the District of Nebraska) have found consistently that supervisors and managers cannot be held individually liable under the ADEA because they are not "employers" within the meaning of the statute. <u>See, e.g.</u>, <u>Pierce v. Washington County Central Dispatch 911</u>, No. 4:06CV1636SNL, 2007 WL 4270669, at *5 (E.D. Mo. Nov. 30, 2007) (citing <u>Kelleher v. Aerospace Comm. Credit Union</u>, 927 F. Supp. 361, 363 (E.D. Mo. 1996); <u>Smith v. Bankers Life and Casualty Co.</u>, 519 F. Supp. 2d 964 (S.D. Iowa 2007); <u>Feller v. McCarthy</u>, 2007 WL 3204463 (D. Neb. 2007); <u>Weller v. Legal Aid of Western Missouri</u>, 2005 WL 2090781 (W.D. Mo. 2005); <u>Taylor v. Wright</u>, 2005 WL 2033422 (E.D. Mo. 2005); <u>Beckler v. Schweigert Brothers, Inc.</u>, 2004 WL 1240964 (E.D. Mo. 2004)). Courts of appeals in other circuits have reached the same conclusion. <u>See, e.g.</u>, <u>Smith</u>, 519 F. Supp. 2d at 967 (citing <u>Stults v. Conoco, Inc.</u>, 76 F.3d 651, 655 (5th Cir.1996); <u>Csoka v. United States Gov't</u>, No. 94-1204, 1996 WL 467654, at *5 (7th Cir. Aug.12, 1996); <u>Smith v. Lomax</u>, 45 F.3d 402, 403 n.4 (11th Cir.1995); <u>Birkbeck v. Marvel Lighting Corp.</u>, 30 F.3d 507, 511 (4th Cir. 1994); <u>Miller v. Maxwell's Int'l, Inc.</u>, 991 F.2d 583, 587 (9th Cir.1993)). Furthermore, the Eighth Circuit has held that supervisors may not be held individually liable under Title VII, <u>see</u> <u>Bonomolo-Hagen v. Clay Central-Everly Community School Dist.</u>, 121 F.3d 446, 447 (8th Cir. 1997) (per curium), and the term "employer" is defined similarly in Title VII and in the ADEA, <u>compare</u> 42 U.S.C. § 2000e(b) <u>with</u> 29 U.S.C. § 630(b). Thus, it is highly likely that the Eighth Circuit will find, when presented with the question, that supervisors cannot be held individually liable under the ADEA. Moreover, I note that although the plaintiff has alleged that Dawes County is an employer within the meaning of the ADEA, (<u>see</u> Compl., filing 1, ¶ 5), he has made

12

no allegation or argument that the individual defendants are employers within the meaning of the ADEA. Under these circumstances, and in light of the foregoing authorities, I shall dismiss the plaintiff's ADEA retaliation claim insofar as Madsen, Fisher, Nitsch, and Fankhauser are sued in their individual capacities.

Second, I note that in support of their motion for summary judgment, the defendants have argued only that the plaintiff's <u>termination</u> did not amount to retaliation in violation of the ADEA. (<u>See</u> Defs.' Br., filing 34, at 15-20.) The complaint alleges, however, that the defendants retaliated against the plaintiff not only by terminating his employment, but also by "failing to increase his pay, [and by] changing his terms and conditions of employment." (Compl., filing 1, ¶ 37. <u>See also</u> Pl.'s Br., filing 46, at 18-23.) Because the defendants' motion does not address the plaintiff's claims that the defendants denied the plaintiff a pay increase and altered the terms and conditions of his employment in retaliation for engaging in protected activity, those aspects of the plaintiff's ADEA-based retaliation claim remain to be resolved at trial.

I turn now to the defendants' argument that the plaintiff cannot show that his termination violated the ADEA's anti-retaliation provision. The plaintiff's retaliation claim may be analyzed under the <u>McDonnell Douglas</u> burden-shifting framework described above. <u>See</u> <u>Stewart v. Independent School Dist. No. 196</u>, 481 F.3d 1034, 1042-43 (8th Cir. 2007) ("Without direct evidence of a retaliatory motive, we analyze retaliation claims (whether under Title VII, the ADA, or the ADEA) under the burden-shifting framework of <u>McDonnell Douglass Corp. v. Green</u> . . . .").

> Under this framework, the initial burden is on the plaintiff to establish a prima facie case, consisting of evidence: "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." If the plaintiff establishes a prima facie case, the burden then shifts to the defendant[s] to show a "non retaliatory reason for the adverse employment action." If the defendant[s] can show a legitimate, non-retaliatory reason for [their] actions, the burden returns to the plaintiff who "is 'then obliged to present evidence that (1) creates a question of fact as to whether [the defendants'] reason was pretextual and (2) creates a reasonable inference that [the defendants] acted in retaliation.' "

13

Stewart, 481 F.3d at 1043 (citations omitted).

The defendants argue first that the plaintiff cannot establish a prima facie case under this framework because there is no causal link between his protected activity and his termination. (See Defs.' Br., filing 34, at 17-18.) More specifically, the defendants claim that the only connection between the filing of the plaintiff's first charge of discrimination on July 21, 2005, and his termination on September 7, 2005, flows from "the mere chronology of events." (Id. at 17.) Furthermore, they submit that the plaintiff's failure to communicate verbally with Fankhauser, the plaintiff's scheduling errors, his placement of confidential documents in his hat, his decision to allow his son to use the office computer, and his inappropriate remarks to veterans constitute "intervening unprotected events" which "obliterate Plaintiff's claim of a causal connection." (Id. at 18 (citing, inter alia, Tenkku v. Normandy Bank, 348 F.3d 737 (8th Cir. 2003)). The defendants add that, even if the plaintiff were able to establish a prima facie case of retaliation, the aforementioned "intervening unprotected events" constitute legitimate, nondiscriminatory reasons for the plaintiff's termination, which obliges the plaintiff to establish that those reasons are merely a pretext for unlawful retaliation. (See id. at 19-20.)

As I noted above in my review of the parties' statements of facts, the defendants' claims that the plaintiff refused to communicate verbally with Fankhauser, made scheduling errors, placed confidential documents in his hat, and made inappropriate remarks to veterans have been denied by the plaintiff. (See supra Part I.) The plaintiff also disputes whether his son's use of the office computer was inappropriate. (See id.) Apart from the denials incorporated into his statement of facts, however, the plaintiff has not addressed the arguments submitted by the defendants. (See Pl.'s Br., filing 46, at 18-23.) Rather than responding to the defendants' claim that there is no causal connection between the plaintiff's termination and the filing of his first charge of discrimination, and instead of arguing that the defendants' proffered nondiscriminatory reason for terminating him is a pretext for discrimination, the plaintiff merely emphasizes that his retaliation claim is not based solely on his termination, argues that he suffered adverse employment actions apart from his termination, and submits that he need not "prove the merits of the underlying discrimination charge" in order to pursue his retaliation claim. (See id.)

Federal Rule of Civil Procedure 56(e) provides that a party opposing a properly-made

14

summary judgment motion "must set forth specific facts showing that there is a genuine issue for trial." Here, the plaintiff has come forward with evidence showing that the "intervening unprotected events" cited by the defendants are genuinely disputed; however, there is no genuine issue for trial unless the plaintiff can establish that there is a causal connection between his protected activity and his termination, and that the defendants' true reason for terminating him was retaliatory. See Stewart, 481 F.3d at 1043; Grey v. City of Oak Grove, Mo., 396 F.3d 1031, 1034 (8th Cir. 2005) ("The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law.").

It is a close question whether the plaintiff has shown that there is a causal connection between the filing of his charge and his termination. Only a "minimal showing" of a causal connection is required to satisfy a plaintiff's prima facie burden. Smith v. Allen Health Systems, Inc., 302 F.3d 827, 833 (8th Cir. 2002). Generally, however, "more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." Id. at 832 (quoting Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999)). "A pattern of adverse actions that occur just after protected activity can supply the extra quantum of evidence to satisfy the causation requirement." Id. If there is no evidence of such a pattern, however, and if the plaintiff seeks to satisfy the causation requirement based solely on the temporal proximity between the protected activity and the adverse employment action, "the temporal proximity must be very close." Id. at 833 (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). In this case, the plaintiff argues that he suffered a number of adverse employment actions just after he filed his charge of discrimination on July 21, 2005, beginning with the defendants' failure to give him a scheduled pay increase in July 2005, and culminating in his termination on September 7, 2005. (See Pl.'s Br., filing 46, at 18-19.) The plaintiff's claim that he experienced these additional adverse employment actions is not supported by evidence, however, and it is well-established that the plaintiff "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Moreover, the interval between the plaintiff's charge and his termination–which amounts to approximately six weeks–is arguably insufficient, standing alone, to establish the causation element of the plaintiff's prima facie case.

15

See Smith, 302 F.3d at 833 (holding that a two-week interval was "sufficient, but barely so, to establish causation" for the purposes of a prima facie case of discrimination).

Even if I assume that the plaintiff has established a prima facie case of retaliation, however, it is clear that the plaintiff has failed to show that the defendants' reasons for discharging him were a pretext for retaliation. I am mindful of the fact that the plaintiff has denied that he communicated ineffectively with Fankhauser, made scheduling errors, placed confidential documents in his hat, made inappropriate remarks to veterans, and allowed his son to use the computer in contravention of office policy. But the Eighth Circuit has explained that a plaintiff cannot demonstrate pretext by simply denying "doing the acts he was accused of doing or assert[ing] that he had good reasons for his actions." Grey v. City of Oak Grove, Mo., 396 F.3d 1031, 1035 (8th Cir. 2005). The plaintiff's "denials and justifications [are] not evidence that [the defendants] fabricated the charges." Id. "The question is whether [the defendants'] articulated reasons for discharge were a pretext for retaliation, not whether [the plaintiff] actually did what he was accused of doing or whether discharge was warranted." Id. (citing Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 989 (8th Cir. 1999)). Although "[i]t is possible for strong evidence of a prima facie case to establish pretext," in this case the plaintiff's evidence of causation was "far from strong." Smith, 302 F.3d at 834. Therefore, I find that there is no genuine issue for trial, and the defendants are entitled to summary judgment on the plaintiff's retaliatory discharge claim.

In summary, for the reasons explained above, I find that Madsen, Fisher, Nitsch, and Fankhauser are entitled to summary judgment on the plaintiff's ADEA-based retaliation claim insofar as they are sued in their individual capacities, and that Dawes County, along with Madsen, Fisher, Nitsch, and Fankhauser insofar as they are sued in their official capacities, are entitled to summary judgment to the extent that the plaintiff's claim is based upon his termination. In all other respects, the defendants' motion for summary judgment on Count III of the plaintiff's complaint will be denied.

      **C.    Count IV - Retaliation in Violation of the First Amendment**

The plaintiff claims that the defendants "deprived the Plaintiff of his rights to Free Speech contrary to the First Amendment to the United States Constitution by retaliating against

16

him for speaking out on matters of public concern." (Compl., filing 1, ¶ 42.) More specifically, the plaintiff claims that the filing of his charge of discrimination constituted speech on a matter of public concern and that the defendants violated the First Amendment by retaliating against the plaintiff for filing this charge. (See, e.g., Defs.' Br., filing 34, at 21 (quoting Defs.' Index, filing 31, Ex. 14, Nelson Dep. at 53:10-54:24); Pl.'s Br., filing 46, at 23-24.) As I noted above, this count remains viable only against Dawes County, against Fisher and Fankhauser in their individual and official capacities, and against Madsen and Nitsch in their official capacities only.

The defendants argue that they are entitled to summary judgment on this claim because the plaintiff cannot show that he truly spoke "on a matter of public concern." (See Defs.'s Br., filing 34, at 22.) In response, the plaintiff argues that "[c]omplaining of discrimination, even when you are the one being discriminated against, has been held to be a matter of public concern." (Pl.'s Br., filing 46, at 24 (citing Belk v. City of Eldon, 228 F.3d 872 (8th Cir. 2000)).)

Because the "protected speech" at issue here is the filing of a charge of discrimination, the substance of the plaintiff's First Amendment retaliation claim is virtually identical to that of his ADEA retaliation claim–except that the ADEA provides a basis for suit against "employers," (see supra Part III.B), while the First Amendment claim, which is brought pursuant to 42 U.S.C. § 1983, provides a basis for suit against the individual defendants as well. See Okruhlik v. University of Arkansas, 395 F.3d 872, 878 (8th Cir. 2005). Thus, the plaintiff's First Amendment retaliation claim must be analyzed using the same framework that was applied to analyze his ADEA retaliation claim; that is, the plaintiff must show that 1) he engaged in a protected activity, 2) the employer took an adverse employment action against him, and 3) the two situations are causally connected. Id. See also Duffy v. McPhillips, 276 F.3d 988, 991 (8th Cir. 2002). "Once the employee satisfies his initial burden, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for his or her actions." Duffy, 276 F.3d at 991 (citation omitted). "If the employer meets this burden, the burden shifts back to the employee to show that [the] employer's actions were a pretext for illegal retaliation." Id.[6]

I have already analyzed the plaintiff's retaliation claim using this framework, and there is

---

[6] As noted above in Part III.A, the plaintiff must make an additional showing before Dawes County may be held liable under § 1983.

17

no need to repeat that analysis here. For the reasons stated in Part III.B above, I find that all of the defendants are entitled to summary judgment on the plaintiff's First Amendment retaliation claim to the extent that the claim is based upon the plaintiff's termination. In all other respects, however, the defendants' motion for summary judgment on Count IV of the complaint will be denied.

### D. Count V - Due Process

The plaintiff alleges that the defendants "deprived the Plaintiff of his rights to Due process contrary to the Fourteenth Amendment to the United States Constitution by failing to give him proper notice and an opportunity to be heard before taking his property and interests." (Compl., filing 1, ¶ 47.) As noted above, this count remains viable against Dawes County and against Madsen, Fisher, Nitsch, and Fankhauser in their official capacities only.

In support of their motion for summary judgment, the defendants argue that the plaintiff cannot show that he was terminated in violation of his due process rights because "employees [generally] have no property right in their employment," (Defs.' Br., filing 34, at 23), and because the plaintiff's "position was an 'at-will' position," (id. at 25). See also Spitzmiller v. Hawkins, 183 F.3d 912, 915-16 (8th Cir. 1999) ("To claim entitlement to pre-termination due process, [a plaintiff] must show that he had a protected property interest derived from a source such as state law. To establish a protected property interest in his employment, he must show that he could have been fired only for good cause." (citations omitted)). In response, the plaintiff does not argue that he had a protected property interest in his employment. (See Pl.'s Br., filing 46, at 24-26.) Instead, he argues that he had a property interest in a pay raise that was due at the end of his probationary period and in "continued employment for two weeks after notice [of his termination] was given to him." (Id. at 25. See also id. at 24 (quoting Defs.' Index, filing 31, Ex. 1 at CM/ECF page 13).) The defendants have not replied to the plaintiff's response.

I find that the defendants are entitled to summary judgment on Count V to the extent that the plaintiff's due process claim is based specifically upon his termination; however, the defendants' motion will be denied insofar as the plaintiff alleges that he was deprived of a pay raise and two weeks' notice prior to his termination.

### E. Section 1983 Liability and Qualified Immunity

The defendants argue generally that each of the plaintiff's § 1983 claims against Dawes County, along with each of his "official capacity" claims against Madsen, Fisher, Nitsch, and Fankhauser, must be dismissed because the plaintiff has failed to show that an "official policy" or "custom" caused a violation of the plaintiff's rights. (Defs.' Br., filing 34, at 27 (citations omitted).) By my count, and in light of the foregoing analysis, the only remaining § 1983 claims against "official capacity" defendants (or Dawes County) are: 1) the plaintiff's First Amendment retaliation claim, but only to the extent that the claim is based on allegedly adverse employment actions apart from the plaintiff's termination; and 2) the plaintiff's due process claim, but only to the extent that it is based on the plaintiff's alleged property interests in a pay raise and pre-termination notice. Each of these claims were wholly neglected in the defendants' summary judgment brief. Moreover, it seems to me that there remains a genuine issue as to whether these alleged violations were caused by a government official with "final policymaking authority." E.g., Davison v. City of Minneapolis, 490 F.3d 648, 659-60 (8th Cir. 2007).[7] Therefore, I must reject the defendants' argument.

Defendants Madsen, Fisher, Nitsch, and Fankhauser also seek to "renew their qualified immunity defense," (Defs.' Br. at 28), which was originally presented in a brief filed in support of the defendants' motion to dismiss the complaint. (See generally filing 21.) My analysis of the defendants' qualified immunity arguments is set forth in my Memorandum and Order on Defendants' Motion to Dismiss, filing 35, and the defendants have not persuaded me that this analysis should be reconsidered.

In summary, Count I of the plaintiff's complaint has been dismissed in accordance with the parties' stipulation; all defendants are entitled to summary judgment on the plaintiff's equal protection claim (Count II); all defendants who have been sued in their individual capacities are entitled to summary judgment on the plaintiff's ADEA retaliation claim (Count III), and all other defendants are entitled to summary judgment on this claim (Count III) to the extent that the claim

---

[7]I note that the defendants failed to address this issue in their summary judgment brief, despite the plaintiff's allegations that Madsen, Fisher, Nitsch, and Fankhauser "were policy makers for Defendant Dawes County." (Compl., filing 1, ¶¶ 41, 46.)

is based on the plaintiff's termination; all defendants are entitled to summary judgment on the plaintiff's First Amendment retaliation claim (Count IV) to the extent that the claim is based on the plaintiff's termination; and all defendants are entitled to summary judgment on the plaintiff's due process claim (Count V) to the extent that the claim is based specifically on the plaintiff's termination, but not insofar as it is based on the defendants' alleged failure to provide the plaintiff with a scheduled pay increase and two weeks' notice prior to his termination.

**IT IS ORDERED** that:

1. The defendants' motion for summary judgment, filing 33, is granted in part; and

2. The defendants' objections to the exhibits offered by the plaintiff in opposition to the defendants' summary judgment motion, filing 54, are sustained in part and overruled in part, as explained in the memorandum accompanying this order. To the extent that I have found it unnecessary to address specific objections raised by the defendants, those objections are overruled.

Dated February 19, 2008.

                              BY THE COURT

                              s/ Warren K. Urbom
                              United States Senior District Judge